## Holbrook v. Sisk.

### (Decided November 27, 1925.)

### Appeal from Hopkins Circuit Court.

1. Sunday—Contract Made on Week Day Not Rendered Invalid by Visit to Inspect Property on Sunday.—In action to recover reasonable compensation for services in finding and locating coal field for defendant, where contract was made on week day, and only thing done on Sunday was that plaintiff and defendant visited property to look it over and to meet person who had option on it, and property was not purchased until a year or more afterward, right to recover was not defeated on ground that contract was made on Sunday.

2. Mines and Minerals—Evidence Held to Sustain Finding of Compensation Due for Services in Finding and Locating Coal Field for Defendant.—In action to recover reasonable compensation for finding and locating coal field for defendant, evidence held to sustain finding for plaintiff for $1,750.00.

GORDON, GORDON & MOORE for appellant.

CHAS. G. FRANKLIN and J. A. JONSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and plaintiff below, L. P. Sisk, filed this ordinary action in the Hopkins circuit court against the appellant and defendant below, Rowan Holbrook, whereby he sought the recovery of a judgment against defendant for reasonable compensation for his services in finding and locating for defendant a certain coal field that could be profitably mined by the stripping process and at a price satisfactory to defendant and terms agreeable to him, and of which he afterwards availed himself and purchased the land in conjunction with others whom he was representing at the time. The petition averred that, "For said services defendant then and there promised and agreed to pay plaintiff and to pay him well." It also alleged that plaintiff not only informed defendant of the location of such lands but gave him the name of the option owner thereon, and plaintiff then and there communicated with the optionee by telephone and arranged a meeting between him and defendant; that on the Sunday following, which was in July, 1921, they met the option owner on the land and spent several hours inspecting it, and that defendant and those for whom he was acting finally agreed to and did purchase the land, which, however, was not completed for a year or more, because of time consumed in perfecting titles; that after the purchase was completed he demanded payment of plaintiff of 10% of the purchase price ($29,445.00) which he alleged was reasonable compensation for his services. The answer was a denial of the agreement to either employ or compensate plaintiff, but it admitted the purchase of the lands as set out in the petition. Upon trial there was a verdict in favor of plaintiff for $1,750.00 upon which judgment was rendered and defendant's motion for a new trial having been overruled, he prosecutes this appeal.

The evidence discloses, in substance, that plaintiff was a coal operator on a small scale and was at the time of the alleged contract engaged in mining coal near the city of Hartford, in Ohio county, and that defendant was a banker at that place, and he had been approached by the owners of the Southern Coal Company at Memphis with a view of locating and purchasing such coal land as herein involved. Plaintiff testified that he met defendant at his bank one morning in July, 1921, and he inquired of plaintiff, "Do you know of a stripping pro-

position? . . . I know of some parties that want a good stripping proposition,'' and, ''If you know of a good proposition there is a barrel of money in it for us.'' Plaintiff then and there informed him that he knew of such a proposition, ''Provided it is not sold or under option.'' Whereupon defendant said, ''If it isn't under option, and it is like you say, we will buy it. . . . I will pay you and pay you well.'' Plaintiff had in mind certain lands of the character desired by defendant located near St. Charles, and upon which a Mr. Cranor had an option, all of which he informed defendant at the time, and at his suggestion plaintiff then and there telephoned to Mr. Cranor and arranged for a meeting, which occurred on the following Sunday with plaintiff, defendant and Cranor present. After that Sunday visit another one was made when both plaintiff and defendant were present and where one of the owners of the Southern Coal Company, a Mr. Collins, was also present. From that time forward the negotiations progressed, finally culminating in the purchase of the property for the price of $29,445.36.

Defendant in his testimony admitted the conversation with plaintiff with reference to the purchase of the character of coal land described, and that plaintiff told him of the location of the land and of Mr. Cranor having an option on it and that the latter was then and there called over the telephone by plaintiff. He then said, ''I think Mr. Sisk called him (Mr. Cranor), so we came here and went down to see Mr. Cranor. Mr. Sisk went with me. I hired a car and I think it was on Sunday and we went over there and I took it up with Mr. Collins, wrote Mr. Collins about it, and we went back and Mr. Sisk went back with me again and Mr. Martin Collins was along. I finally agreed with Mr. Cranor about the price per acre I was to give him—he had it optioned at from $25.00 to $30.00 an acre—and I agreed with him on the price and signed an agreement with Mr. Cranor for the Southern Coal Company by me, and went on and investigated it, and spent several thousand dollars and I paid Mr. Cranor.'' However, he denied that he agreed or promised to pay plaintiff anything for his services, although he was aware that plaintiff paid a part if not all of his expenses in making the trips with defendant to see the property.

It is insisted on this appeal that the judgment is erroneous because, (1) that the contract sued on was in

violation of the statute forbidding labor on the Sabbath day, and was, therefore, void and unenforceable, and (2) that the verdict is excessive. Some complaint is also made of the instructions of the court, but an examination of them thoroughly convinces us that they are not subject to the criticisms made, and we will not incumber the opinion by a further reference to that objection.

Reason (1), urged against the judgment would no doubt be a valid one if the facts of the case brought it within the defense relied on, but since they fail to do so, the argument must be held to be without merit. The contract relied on in the petition was made, if at all (and the jury found by its verdict that it was), on a week day, and the only thing done on Sunday was a visit by plaintiff and defendant to look over and inspect the property, as well as to meet Mr. Cranor. No contract of any nature was perfected on that day and another meeting for the same purpose with Mr. Collins present was had on another week day about a month later. However, it was not until as much as or more than a year after that before plaintiff and his associates purchased the property. It, therefore, requires no argument or discussion to show that the contract here sued on is not affected with the vice of having been entered into on the Sabbath day.

In support of reason (2), it is strenuously argued that plaintiff made only two trips which were comparatively inexpensive, and that $1,750.00 is grossly excessive. That argument, it seems to us, overlooks the main item in and purpose of the contract sued on, and which the jury found was made, which was, not payment for merely the time that might be consumed by plaintiff in bringing about the result desired by defendant, but payment for the reasonable value to defendant of locating the character of property that he desired to purchase and bringing him in connection with the seller, followed by the eventual obtention by him of the property on terms satisfactory and agreeable to him. In other words, the thing for which he contracted to pay plaintiff was the furnishing by the latter of an opportunity to make a desired investment, and in the accomplishment of which the amount of time consumed by plaintiff was immaterial as compared to the value of the information he imparted to defendant and by means of which he was enabled to make the desired purchase.

Plaintiff introduced two real estate agents who possessed wide experience in dealing and handling the same

character of propositions, as well as real estate generally. One of them testified that the services of plaintiff were worth as much as 10% of the purchase price of the property, which was the amount he sought to recover. The other one fixed the value of his services at from $2,000.00 to $2,500.00. No one denied the values so fixed, since neither plaintiff testified thereon, nor did he introduce any witness upon that issue. We are, therefore, called upon by counsel for appellant to utterly discard and ignore all the testimony in the case and to grope around in the dark to find out the actual facts upon a proposition about which we have no judicial knowledge and but little personal knowledge. No rule of practice known to us authorizes such a course on our part unless, perhaps, the matters involved are so universally known as to afford us judicial knowledge that is so convincing of the error as to make it at once patent. This case does not come within the latter class, and we are constrained to hold that we are without authority to sustain this contention.

There being nothing found in the record authorizing our interference with the judgment, it is accordingly affirmed.